IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

           Plaintiff,

Vs.                                        No.  06-40029-01-SAC

EPIFANIO TRUJILLO,

           Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the defendant's pretrial motion to suppress evidence found in the vehicle in which he was driving on February 23, 2006. (Dk. 21).  The government has filed a response opposing the motion. (Dk. 25).  The parties presented evidence and oral argument in support of their positions on August 9, 2006.  Having reviewed all matters submitted and having researched the relevant law, the court is ready to rule on the motions.

**INDICTMENT**

The defendant Epifanio Trujillo is charged in a single count indictment with violating 21 U.S.C. § 841(a)(1) on February 23, 2006, in the District of Kansas, by possessing with the intent to distribute 1160 grams of methamphetamine.

**FACTS**

On the morning of February 23, 2006, Deputy Tracey Trammel with the Shawnee County Sheriff's Office was checking the speed of eastbound traffic on I-70 Highway with his radar unit. Deputy Trammel noticed a car that was passing a large truck cut suddenly into the right lane between other vehicles when it came within viewing distance of the Deputy's patrol car. The car continued in the right lane maintaining an unsafe following distance. Deputy Trammel began following the car and ran a computer check on its displayed license plate. The check found no records for the license plate.

Deputy Trammel activated his emergency lights and pulled over the car near milepost 353 at approximately 9:17 a.m. according to the clock on his dash-mounted video camera which recorded the rest of the traffic stop. As he approached the car on foot and came alongside its trunk, he noticed the strong odor of a deodorizer. Deputy Trammel described the odor as overwhelming when he reached the open window of the driver's door, but he could not see the source of this odor.

Deputy Trammel greeted the driver and passenger and requested a driver's license and registration. The driver produced a Utah driver's license that identified him as the Epifanio Trujillo, the defendant. The Deputy explained that

2

Trujillo had been following too closely the vehicle in front of him and that a license check on his tag came back with no record. When asked about his travel plans, Trujillo said he was going to Kansas City because he had a musical instrument, a bass, that was broken and needed repairs. In response, the Deputy inquired about where they were traveling from and the defendant answered Salt Lake City. The Deputy returned to his patrol car to check on the driver's license and proof of insurance.

Deputy Trammel testified that the defendant appeared extremely nervous as his hands were shaking and his breathing was heavy and that his nervousness did not abate during the stop as reflected by inappropriate laughter later in the stop. The Deputy found it noteworthy that the passenger never made eye contact with him during the traffic stop. The Deputy observed that the ignition key was the only key on the defendant's key ring. The Deputy testified that most people have more than one key on a key ring and that a single key suggests the car was recently purchased or borrowed or was being used in a situation in which it was important for the defendant to transfer the possession of the car readily to another person.

The check of the defendant driver's license showed it was valid. The proof of insurance card was issued in the defendant's name for that car and showed

an effective date of September 2004. The defendant did not produce a registration for the car. Both the tag and the vehicle identification number of the car showed no current registration. While completing the license check and warning citations, Deputy Rhodd arrived in response to Deputy Trammel's request for backup. The video recording captures their conversation about the lack of registration for the car, the computer check showing no records for the license plate and VIN, and the unusual travel plans of driving from Salt Lake City to Kansas City in order to have a bass guitar repaired.

Deputy Rhodd remained by the patrol car, as Deputy Trammel walked back to the defendant's car. The video captures Deputy Trammel leaning into the window, returning the defendant's license and documentation, and explaining the warning citations for unsafe following distance and invalid tag. Deputy Trammel then stood up, shook the defendant's hand, and said "thank you." Deputy Trammel visibly shifted his weight towards the rear of the car, stopped, stepped forward, and sought permission to ask a couple more questions. He used the same conversational tone of voice used throughout the traffic stop. The defendant gave permission, and the Trooper asked several more questions with regard to the defendant's travel plans before asking whether the defendant had anything illegal in the car including large amounts of illegally-gained money or unlawful narcotics.

The defendant said he had nothing illegal and joked about having only a toothbrush. Deputy Trammel then asked for permission to search the car, and the defendant indicated he didn't hear or understand the Deputy's question. The Deputy again asked if he could search the car and the defendant answered "yes." The Deputy repeated his request to search the car two more times, and the defendant each time answered, "yes." The defendant and his passenger whom the defendant identified as his wife waited in the patrol car, as the officers searched the defendant's car with a drug detection canine unit which alerted to the interior of the car. The officers eventually found methamphetamine secreted in the car's interior.

**RELEVANT LAW and ANALYSIS**

A traffic stop is a seizure under the Fourth Amendment. *United States v. Taverna*, 348 F.3d 873, 877 (10th Cir. 2003). Routine traffic stops are analyzed under the investigative detention principles outlined in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998). The reasonableness of a traffic stop is a dual inquiry: (1) "whether the officer's action was justified at its inception," and (2) whether the officer's action "was reasonably related in scope to the circumstances that first justified the interference." *United States v. Burch*, 153 F.3d 1140, 1141 (10th Cir.1998) (quotation omitted).

The defendant here advances no challenge to the validity of the initial

stop. He confines his argument to whether the deputy exceeded the proper scope of the detention in asking additional questions after the initial justification for the stop was concluded. The defendant does not claim that his detention before that point exceeded the proper scope or length of the stop. *See Muehler v. Mena*, 544 U.S. 93 (2005) (questioning which does not extend the stop "'beyond the time reasonably required to complete [the stop's original purpose]' is not unconstitutional, regardless of the content of the questions."); *United States v. Wallace*, 429 F.3d 969, 974 (10th Cir. 2005) (same); *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1259-60 (10th Cir. 2006) (questions that extend the length of detention by only a brief time do not make the detention unreasonable).

"Generally, an investigative detention must 'last no longer than is necessary to effectuate the purpose of the stop.'" *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). Its scope must be carefully tailored to its underlying justification. *United States v. Gutierrez-Daniez*, 131 F.3d 939, 942 (10th Cir. 1997), *cert. denied*, 523 U.S. 1035 (1998). But, "an officer conducting a traffic stop may request vehicle registration and a driver's license, run a computer check, ask about travel plans and vehicle ownership, and issue a citation." *United States v. Zubia-Melendez*, 263 F.3d 1155,

6

1161 (10th Cir. 2001). Routine questions about a driver's travel plans typically do not exceed the scope of an ordinary traffic stop. *United States v. Bradford*, 423 F.3d 1149, 1156-1160 (10th Cir. 2005). Upon issuing a citation or warning and determining the validity of the driver's license and right to operate the vehicle, the officer usually must allow the driver to proceed without further delay. *Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999). An officer may extend the stop if he either has a "reasonable articuable suspicion of other crimes or the driver voluntarily consents to further questioning." *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000).

The government argues in part that the encounter here became consensual once Deputy Trammel returned the defendant's documents, explained the warning citations, and then indicated the stop was complete by shaking the defendant's hand, thanking him, and standing away from the driver's window. The defendant maintains the traffic stop never converted into a consensual encounter as Deputy Trammel never left his position by the driver's side window and never turned off his emergency lights.

The Tenth Circuit defines a consensual encounter to be "the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement officer." *Id*. (quotation and citation omitted). "A detention for a

traffic citation can turn into a consensual encounter after the trooper has returned the driver his documentation so long as 'a reasonable person under the circumstances would believe he was free to leave or disregard the officer's request for information.'" *United States v. Wallace*, 429 F.3d at 974-75 (quoting *United States v. Elliott*, 107 F.3d 810, 814 (10th Cir. 1997). "An officer is not required to inform a suspect that he did not have to respond to his questioning or that he was free to leave." *United States v. West*, 219 F.3d at 1177 (citation omitted). In these circumstances, a detention is unlawful "only when the driver has an 'objective reason to believe he or she is not free to end the conversation with the officer and proceed on his or her own way.'" *Id.* (quoting *United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996)).

The videotape shows Deputy Trammel did not use a coercive show of authority that would indicate to a reasonable person that he was not free to leave or to disregard the Deputy's request to ask additional questions. There was not more than one officer immediately present when consent was sought, there was no weapon displayed, the Deputy was not touching the defendant, and the Deputy used a conversational tone of voice. While the Deputy did not say directly that the defendant could leave, his conduct in standing away from the window, shaking the defendant's hand, and expressing his thanks plainly indicated that the detention

8

was over. Additionally, the Deputy shifted his weight towards the rear of the defendant's car before leaning back towards the driver's window and seeking permission to ask more questions. The Deputy's conduct and words were sufficient here to convey to the defendant that any seizure had ended and that he was free to go. That the Deputy remained relatively close to the defendant's car and left on his emergency lights are reasonable officer safety measures, *see United States v. West*, 219 F.3d at 1177, which under the circumstances would not have caused a reasonable person in the defendant's position to believe that he was not free to end the conversation and be on his way. The court concludes a consensual encounter existed and no illegal detention occurred that would taint the defendant's consent to search the car.

Besides a consensual encounter, the government is able to prove that Deputy Trammel had reasonable suspicion of criminal activity when he returned the paperwork to justify extending the stop by additional questions and a request to search the car. *See United States v. Wallace*, 429 F.3d at 974. An officer conducting a traffic stop must point to "specific and articulable facts and rational inferences drawn from those facts" that give rise to a reasonable suspicion of criminal activity in order to extend the detention of a driver. *United States v. Fernandez*, 18 F.3d 874, 878 (10th Cir. 1994) (quotation omitted). Reasonable

9

suspicion requires the officer to act on "something more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7, (1989) (internal quotation marks omitted). Reasonable suspicion of criminal activity is a "likelihood of criminal activity . . . that need not rise to the level required for probable cause, and . . . falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (quotations and citations omitted); *see United States v. Hauk*, 412 F.3d 1179, 1185-89 (10th Cir. 2005) ("Reasonable suspicion may be established by information that is different in quantity or content and less reliable than the information required to establish probable cause." (internal quotations and citations omitted)). Reasonable suspicion is a "fluid concept[ ] that take[s][its] substantive content from the particular context [ ] in which [it is] being assessed." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Even conduct that is wholly innocent may sustain a finding of reasonable suspicion in some circumstances. *Sokolow*, 490 U.S. at 9-10. Indeed, "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. at 277.

   The burden rests with the government to prove the reasonableness of the officer's suspicion. *United States v. Salzano*, 158 F.3d 1107, 1111 (10th Cir.

10

1998). "A variety of factors may contribute to the formation of an objectively reasonable suspicion of illegal activity." *United States v. Hunnicutt*, 135 F.3d at 1349. "The law does not specify a minimum of factors necessary to constitute reasonable suspicion." *United States v. Gutierrez-Daniez*, 131 F.3d at 942 (citation omitted). Arriving at reasonable suspicion is a process dealing with probabilities, not hard certainties, "'as understood by those versed in the field of law enforcement.'" *United States v. Gutierrez-Daniez*, 131 F.3d at 942 (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). Instead of closing their eyes to suspicious circumstances, officers may call on their own experience and training to judge facts and even "perceive meaning in actions that appear innocuous to the untrained observer." *United States v. Gutierrez-Daniez*, 131 F.3d at 942 (citation omitted).

In evaluating a claim of reasonable suspicion, the court assesses the totality of the circumstances, avoids pigeonholing facts as suspicious or not, and "gives deference to a trained law enforcement officer's ability[1] to distinguish between innocent and suspicious circumstances." *United States v. Mendez*, 118

---

[1] Indeed, courts are "to accord deference to the officer's ability to draw on his own experience and specialized training to make inferences from and deductions about the cumulative information available to him that might well elude an untrained person." *United States v. Johnson*, 364 F.3d 1185, 1193 (10th Cir. 2004) (citations and internal quotations omitted).

F.3d 1426, 1431 (10th Cir. 1997).  In other words, courts "may not evaluate and reject each factor in isolation." *United States v. Gandara-Salinas*, 327 F.3d 1127, 1130 (10th Cir. 2003).  The court must remain mindful that reasonable suspicion "represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Alcaraz-Arellano*, 441 F.3d at 1259-60 (quotations and citations omitted).

Upon returning the driver's documentation and before seeking permission to ask additional questions, Deputy Trammel had the following information.  Prior to the stop, the Deputy saw the defendant make a risky driving maneuver to avoid being seen and stopped.  A computer check of the license plate returned no records to indicate that car had a valid plate and registration.  During the stop, the Deputy's suspicion was heightened by several more circumstances.  Both the driver and the passenger displayed extreme nervousness that was sustained throughout the stop.  General nervousness by itself has "limited significance," *see United States v. Wald*, 216 F.3d 1222, 1227 (10th Cir .2000), and "alone cannot support reasonable suspicion of criminal activity," *United States v. Salzano*, 158 F.3d at 1113 (citation omitted), but extreme and sustained nervousness a factor "entitled to somewhat more weight." a *United States v. West*, 219 F.3d at 1179.  Before even reaching the open window, Deputy Trammel

12

detected the overwhelming odor of a deodorizer, and he could not see the source of the odor during the stop.  Standing alone, the scent of air freshener will not sustain a reasonable suspicion but when "coupled with other indicia of criminal activity" will support an extended detention.  *United States v. Villa-Chaparro*, 115 F.3d 797, 802 (10th Cir.), *cert. denied*, 522 U.S. 926 (1997).  The defendant did not produce a registration for the car, and its VIN did not show any current registration.  A lack of proof of ownership or authority to operate a vehicle is a factor that justifies a reasonable detention and further questioning.  *United States v. Nichols*, 374 F.3d 959, 965 (10th Cir. 2004).  The weight of this factor regarding the ownership question is lessened by the defendant having proof insurance in his name for the car.  On the other hand, the lack of records proving registration and the proof of insurance card showing an effective date of just four months ago are relevant together.  Deputy Trammel testified that drug cartels will purchase cars for runners but put the insurance in the name of one of the runners.  *See, e.g.*, *United States v. Berrelleza*, 90 Fed. Appx. 361, 364, 2004 WL 407042, *2 (10th Cir. 2004) (noting officer's testimony that drug cartels commonly supply couriers with vehicles only recently registered and insured).  Seeing only a single key on the defendant's key-ring, Deputy Trammel testified that most people have multiple keys on their key-rings and that a single key could indicate a situation in which it was important for

the defendant to transfer the possession of the car readily to another person. *See United States v. Pena-Gutierrez*, 222 F.3d 1080, 1083 (9th Cir.) (Officer testified to his experience that when key-ring has only two keys then narcotics or aliens were present), *cert. denied*, 531 U.S. 1057 (2000).  Finally, the defendant told the officer he was traveling from Salt Lake City to Kansas City to have a bass guitar repaired.  "Implausible travel plans can contribute to reasonable suspicion." *United States v. Santos*, 403 F.3d 1120, 1129 (10th Cir. 2005).  Considering the distance between Kansas City and Salt Lake City, one has to wonder why a repair shop in Kansas City and why the expense of driving to Kansas City to pick it up.  The court is satisfied that these facts are collectively sufficient under the circumstances of this case to produce a particularized and objective basis for suspecting the defendant of criminal activity.

IT IS THEREFORE ORDERED that the defendant's motion to suppress evidence found in the vehicle in which he was driving on February 23, 2006, (Dk. 21) is denied.

Dated this 30th day of August, 2006, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge